# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

JOHN CROWLEY,

     Plaintiff,

v.

STATE OF NEVADA, *et al.*,

     Defendants.

Case No. 2:10-CV-00150-KJD-VCF

**ORDER**

     Presently before the Court is Defendants Dr. Robert Bannister (sued as Dr. Bannister or Bruce Bannister), Dwight Neven, Pat Diliddo (erroneously sued as Pat Dilido), Tamiia Grisham (erroneously sued as Toma Grisham or Crisham) and Jane Balao-Cledera's (sued erroneously as Jane Cledera) Motion to Dismiss and for Summary Judgment (#18).  Plaintiff filed a response in opposition (#25) to which Defendants replied (#27).  Also before the Court is Plaintiff's Motion for Entry of Clerk's Default (#24).  Plaintiff's motion is denied because Defendants timely filed a response to the complaint.

I.  Background

     Plaintiff has Parkinson's Disease, bipolar disorder and manic depression.  While housed at Lovelock Correctional Center ("LCC"), Plaintiff received the medication Lithium on a schedule that dosed him three times per day–900 mg each morning and afternoon, and 600 mg in the evening.  On

1   or about April 18, 2009, he was transferred to High Desert State Prison ("HDSP").  Upon intake,

2   Plaintiff alleges that a nurse, Defendant Grisham, told him that HDSP only had two pill calls a day,

3   so his Lithium medication would be distributed in two 1200 mg doses a day.[1]  Though Plaintiff

4   alleged that Grisham unilaterally changed his dosing interval, the undisputed evidence reveals that

5   Defendant Dr. Sussman ordered the change.  Furthermore, neither Defendant Bannister nor

6   Defendant Neven directed, endorsed or had knowledge of a policy permitting nurses to amend the

7   dosing interval for prescribed medication.

8          Plaintiff alleges that on or about May 10, 2009, Defendant Diliddo was informed by

9   Plaintiff's cell mate that Plaintiff was unresponsive and exhibiting bizarre behavior such as eating

10  soap.[2]  Plaintiffs' cell mate alleges that Diliddo refused to provide treatment.  On May 14, 2009, the

11  same cell mate again informed a prison official, Defendant Balao-Cledera, that Plaintiff was

12  exhibiting unusual behavior and needed medical attention.[3]  Again Plaintiff alleges that Balao-

13  Cledera failed to treat Plaintiff.  However, six hours later she had Plaintiff transferred to the medical

14  infirmary.[4]  On May 18, 2009, Plaintiff fell into a coma and was transported to Valley Hospital.

15  Plaintiff was diagnosed with a lithium overdose requiring seven weeks of treatment.

16         Plaintiff's amended complaint (#6) was filed January 28, 2011.  Plaintiff was transferred from

17  HDSP to LCC on May 6, 2011.  Defendants have now moved to dismiss some claims and be granted

18  summary judgment on others.  On August 19, 2011, the Court notified (#22) Plaintiff that if he failed

19

20         [1] The record demonstrates that Richard Orden, RN, was the intake nurse who met with Plaintiff upon his arrival

21  at HDSP.  See Doc. No. 19, Exhibit A, Declaration of Karen Walsh, at 2 #7 (citing Attachment I at 1 ("Medical Progress Note" April 16, 2009)); see also, Doc. No. 18, Exhibit D.

22         [2] Defendant Diliddo did not work at HDSP between the dates of May 10, 2009 through May 13, 2009.  See Doc.

23  No. 18, Exhibit E.

24         [3] Defendant Balao-Cledera did not work at HDSP between the dates of May 14, 2009 through May 16, 2009.
    See Doc. No. 18, Exhibit F.

25         [4] The undisputed facts show that in actuality Plaintiff was moved to the infirmary late on May 16, 2009 where

26  Plaintiff was tested for Lithium levels and diagnosed with lithium toxicity on May 18, 2009. See Doc. No. 19, Exhibit A, Declaration of Karen Walsh, at 2 #11, 13.

1  to present evidence raising genuine issues of material fact in support of his claims that his complaint

2  would be dismissed.

3  II.  Standard for Summary Judgment

4       Summary judgment may be granted if the pleadings, depositions, answers to interrogatories,

5  and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any

6  material fact and that the moving party is entitled to a judgment as a matter of law.  See Fed. R. Civ.

7  P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the

8  initial burden of showing the absence of a genuine issue of material fact.  See Celotex, 477 U.S. at

9  323.  The burden then shifts to the nonmoving party to set forth specific facts demonstrating a

10  genuine factual issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

11  587 (1986).

12       All justifiable inferences must be viewed in the light must favorable to the nonmoving party.

13  See Matsushita, 475 U.S. at 587.  However, the nonmoving party may not rest upon the mere

14  allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit

15  or other evidentiary materials as provided by Rule 56(e), showing there is a genuine issue for trial.

16  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The court need only resolve factual

17  issues of controversy in favor of the non-moving party where the facts specifically averred by that

18  party contradict facts specifically averred by the movant.  See Lujan v. Nat'l Wildlife Fed'n, 497

19  U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345

20  (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine

21  issue of fact to defeat summary judgment).  Evidence must be concrete and cannot rely on "mere

22  speculation, conjecture, or fantasy.  O.S.C. Corp. v. Apple Computer, Inc., 792 F.2d 1464, 1467 (9th

23  Cir. 1986). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine

24  issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air Inc., 281 F.3d

25  1054, 1061 (9th Cir. 2002).

26

1    Summary judgment shall be entered "against a party who fails to make a showing sufficient

2  to establish the existence of an element essential to that party's case, and on which that party will

3  bear the burden of proof at trial." Celotex, 477 U.S. at 322.  Summary judgment shall not be granted

4  if a reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 248.

5  III.  Analysis

6      A.  Defendants Neven and Bannister

7    In order to establish a cognizable action under 42 U.S.C. § 1983, a party must demonstrate

8  personal involvement in the violation.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  "A

9  supervisor is only liable for the constitutional violations of his subordinates if the supervisor

10 participated in or directed the violations, or knew of the violations and failed to act to prevent them."

11 Id., (citing Ybarra v. Reno Thunderbird Mobile Home Village, 723 F.2d 675, 680-81 (9th Cir.

12 1984)).  Here, Plaintiff concedes that Defendant Neven did not participate in, direct or know of the

13 alleged constitutional violations.  Furthermore, Plaintiff has produced no admissible evidence that

14 raises a genuine issue of material fact about whether Defendant Bannister knew of the alleged

15 constitutional violations.  Therefore, the claims against Neven and Bannister are dismissed.

16      B.  Defendants Grisham, Diliddo, or Balao-Cledera

17    The uncontroverted evidence shows that Grisham was neither the intake nurse when Plaintiff

18 was transferred to HDSP nor the person who ordered a change in his medication schedule.  Further

19 the alleged treatment of Plaintiff by Grisham on May 17, 2009 shows that the level of care provided

20 cannot state a claim for deliberate indifference to Plaintiff's serious medical needs.  See Estelle v.

21 Gamble, 429 U.S. 97, 106 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.

22 1992)(deliberate indifference requires that defendants purposefully ignore or fail to respond to the

23 prisoner's pain or medical needs).  Therefore, all claims against Grisham are dismissed.

24    The uncontroverted evidence also shows that Defendant Diliddo was not present the days

25 (May 10-13, 2009) on which Plaintiff alleges that she ignored his serious medical needs, because she

26 did not work on those days.  On the last day that Diliddo was present (May 16, 2009), Plaintiff was

4

1  admitted to the HDSP infirmary.  Even if Diliddo had been informed of Plaintiff's heath problems,

2  the potential eight-hour delay between allegedly being informed of Plaintiff's "bizarre" behavior and

3  altered mental state and Plaintiff being admitted to the infirmary does not state a claim for deliberate

4  indifference.  See id.  Therefore, the claims against Defendant Diliddo are dismissed.

5          Plaintiff also incorrectly alleges that Defendant Balao-Cledera was informed of his medical

6  condition and refused to provide treatment despite knowing that he was suffering a Lithium overdose

7  on May 14, 2009.  The undisputed facts show that Defendant Balao-Cledera did not work at HDSP

8  between the dates of May 14, 2009 through May 16, 2009.  Furthermore, the nurse, Ruby Cordero,

9  who did respond on May 16, 2009, arranged to have him taken to the HDSP infirmary.   Finally, the

10  actual treatment of Plaintiff by Balao-Cledera on May 17-18, 2009 shows that the level of care

11  provided cannot state a claim for deliberate indifference to Plaintiff's serious medical needs.  See

12  McGuckin, 974 F.2d at 1059.  Therefore, all claims against Balao-Cledera are dismissed.

13          C.  Qualified Immunity

14          Finally, even if a constitutional violation had been demonstrated, there was no clearly

15  established law that would have put Defendants on notice that his or her conduct was unlawful.  "If a

16  constitutional violation occurred, a Court must further inquire whether the right was clearly

17  established."  Clement, 298 F.3d at 903 (quoting Saucier, 533 U.S. at 201) (internal quotations

18  removed).  If the law did not put the officials on notice that their conduct would be clearly unlawful,

19  summary judgment based on qualified immunity is appropriate.  Saucier, 533 U.S. at 202.  Here,

20  Plaintiff has demonstrated no law that shows the alleged or proven conduct by any defendant, other

21  than Daniel Sussman, put Defendants on notice that their conduct would be clearly unlawful.

22  Accordingly, Defendants Neven, Bannister, Grisham, Diliddo, and Balao-Cledera are entitled to

23  qualified immunity.

24          D.  Injunctive Relief

25          Now that Plaintiff has been transferred back to LCC his claims for injunctive relief are moot

26  and hereby dismissed.

IV.  Conclusion

Accordingly, IT IS HEREBY ORDERED that  Defendants' Motion to Dismiss and for Summary Judgment (#18) is **GRANTED**;

IT IS FURTHER ORDERED that Plaintiff's Motion for Entry of Clerk's Default (#24) is **DENIED**.

DATED this 22nd day of March 2012.


_____
Kent J. Dawson
United States District Judge